UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED JAN 16 2020

CAROL L. MICHEL
CLERK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 15-289 |
| v. | * | SECTION: "B" |
| ANDRE DOMINICK | * | |

\* \* \*

## FACTUAL BASIS

The United States and defendant ANDRE DOMINICK ("DOMINICK") stipulate and agree to the below facts, and further stipulate that such facts provide a sufficient factual basis for his plea of guilty to Count 1 of the Indictment's charge of Deprivation of Civil Rights Under Color of Law, in violation of 18 U.S.C. § 242. The below facts are offered for the limited purpose of establishing a sufficient factual basis to support the guilty plea and therefore do not necessarily describe all the details of the offense or DOMINICK'S complete knowledge of the offense.

The St. Bernard Parish Prison ("SBPP") was a correctional facility in the Eastern District of Louisiana responsible for the custody, control, care, and safety of inmates, including pretrial detainees, who were held in custody following an arrest, but who had not been convicted of a crime. Nimali Henry was a nineteen-year-old pretrial detainee in the custody of the SBPP from March 21, 2014, through April 1, 2014. Henry suffered from serious medical conditions, for which she was under a physician's care, and required medical treatment, including regular medication. While incarcerated at the SBPP, Henry did not receive medication or treatment for her serious medical conditions, she was not evaluated or treated by a physician, and she was not taken to a hospital. As a result of not receiving medical evaluation or treatment, Henry died on April 1, 2014.

From approximately 1990 through the time period discussed in this Factual Basis, DOMINICK was employed by the Saint Bernard Parish Sheriff's Office. For most of this time,

AUSA _CM_
Defendant _NL_
Defense Counsel _____

DOMINICK was an SBPP correctional officer. In 2009, DOMINICK became a "POST-certified" correctional officer, having successfully completed the Louisiana Peace Officer Standards and Training Council Jail & Corrections Training course. In 2010, DOMINICK successfully completed a course to became a corrections instructor and became certified to teach the Louisiana Peace Officer Standards and Training Council Jail & Corrections Training course. DOMINICK learned through this training that as a correctional officer, he had a duty to exercise due care and diligence to ensure that inmates were provided with timely and adequate medical treatment. DOMINICK also learned that if he failed in his obligation to ensure that inmates receive timely and adequate medical services, his conduct could result in the inmate suffering severe illness or death and could constitute cruel and unusual punishment in violation of the United States Constitution. Through his training, DOMINICK knew correctional officers were required to take reasonable measures so that inmates showing signs of illness or injury received prompt medical attention from qualified medical personnel.

During the time of Henry's incarceration, DOMINICK and the correctional officers he worked with—including TIMOTHY WILLIAMS, DEBRA BECNEL, LISA VACCARELLA— were responsible for the custody, control, care, and safety of inmates, including pretrial detainees, at the SBPP. During this time, DOMINICK held the rank of Captain and, since approximately February 2014, was temporarily assigned to serve as the jail's acting medical department officer. DOMINICK was generally present at the SBPP on weekdays and available by cell phone at other times.

Based upon his training and experience, DOMINICK knew that all SBPP correctional officers had multiple means of addressing inmate medical issues including: delivering inmates' written medical requests, which were known as sick calls, to the medical department officer;

AUSA
Defendant
Defense Counsel

alerting supervisors and/or the medical department officer of inmates' medical issues; announcing over the radio "code blue" (a signal for all available officers to report to the location of a medical emergency); and calling an ambulance service. DOMINICK also knew that he, as the medical department officer, had additional means of addressing inmate medical issues including: permitting inmates to meet with a physician who visited the SBPP once per week; consulting with inmates' medical providers; requesting inmates' medical records; ordering and administering prescription medication; requesting that the court order pretrial detainees with difficult to manage medical conditions released on their own recognizance; and consulting by phone with physicians with whom the SBPSO contracted.

DOMINICK knew that his responsibilities as medical department officer included reviewing standard SBPP forms known as medical questionnaires and sick calls. The medical questionnaires were used by correctional officers to gather medical information about new inmates. The sick calls were completed by inmates to make medical complaints. Correctional officers would provide completed medical questionnaires and sick calls to the medical department.

Because a physician reported to the SBPP only once per week, DOMINICK knew that on most days an inmate could only receive access to a physician if the SBPP called the ambulance service and the ambulance then brought the inmate to a hospital. As DOMINICK knew, when the ambulance service was called, responding emergency medical technicians ("EMTs") would examine the inmate and determine whether the inmate should remain at the SBPP or should be brought to a hospital for treatment or further evaluation. DOMINICK understood that if EMTs determined that an inmate should be brought to the hospital, SBPP officers were to comply with that determination.

3

AUSA _CM_
Defendant _N_
Defense Counsel _____

On the morning of March 26, 2014, at the SBPP, DOMINICK met with a Department of Children and Family Services investigator. DOMINICK had been summoned to meet with the investigator in response to her request to SBPP staff to discuss Henry's medical issues with the appropriate person. The investigator identified herself and her position to DOMINICK and stated in substance that: she had just visited Nimali Henry; Henry appeared to be ill and was in need of medical attention for serious medical conditions, including a blood disorder known as TTP; Henry has been treated at Ochsner Medical Center for her medical conditions; and Henry, while in custody at SBPP, had not been receiving medications prescribed to treat her medical conditions.

On March 27, 2014, at the SBPP medical office, Dominick met with Henry for the first time. At some point prior to this meeting with Henry, Dominick had reviewed Henry's medical questionnaire and a sick call dated March 26, 2014. The medical questionnaire indicated that Henry reported, among other things: that she was taking two medications; that she was under medical care; the name of her doctor; that she has had kidney failure. The sick call form indicated in substance that Henry: was experiencing dizziness and lightheadedness; was not feeling well; had been treated at Ochsner's medical facility at the Jefferson Highway location; had a history of heart failure, renal failure, and Graves disease; had prescriptions filled at a Walgreens pharmacy; was not feeling well; had been told by her doctor that if she stopped her medical treatment there was a 90% chance she would die.

During his March 27, 2014, meeting with Henry, DOMINICK had no difficulty understanding Henry. Henry was articulate and spoke politely and clearly. At this meeting, DOMINICK permitted Henry to use the medical office telephone to attempt two calls. DOMINICK observed that, for each attempted call, Henry failed to reach anyone.

4

AUSA _CM_
Defendant _____
Defense Counsel _____

During, or around the time of, his March 27, 2014, meeting with Henry, DOMINICK called a Walgreens pharmacy located in Saint Bernard Parish. The pharmacy told DOMINCIK about prescriptions for medications that Henry had filled there. However, DOMINICK did not order the prescriptions that Henry needed, nor did he call Henry's doctor, whose name she had provided on the medical questionnaire.

On March 29, 2014, a physician reported to the SBPP and met with inmates selected by DOMINICK. DOMINICK did not select Henry to be among the inmates to meet with the physician. DOMINICK did not inform the physician about Henry or disclose to the physician any of the information he had obtained about Henry.

On March 31, 2014, at approximately 5:30 p.m., a correctional officer asked DOMINICK to report to an isolation cell where Henry was housed. At that time, Henry was under "medical watch," having been placed on that status that morning by another correctional officer, after an episode in which Henry was weak and disoriented and had experienced significant vaginal bleeding. DOMINICK entered the isolation cell and observed Henry, and acknowledged that he knew that Henry had not had her medication while incarcerated. DOMINICK then directed the correctional officer who had summoned him and BECNEL, who were both present in the isolation cell, to change Henry's watch to "suicide watch." Shortly thereafter, DOMINICK ended his shift and left the SBPP.

DOMINICK took no measures, other than those described above, to help secure the medical attention that Henry needed to address her serious medical conditions. Although these options were available to DOMINICK, he failed to: announce a code blue; call an ambulance service; permit Henry to meet with a physician who visited the SBPP; meet with Henry, other than as has been described above; call Ochsner Medical Center; call the doctor named in Henry's

AUSA  _CM_
Defendant _____
Defense Counsel _____

medical questionnaire, request Henry's medical records; order or administer Henry's medication; request that the court order Henry released on her own recognizance; and attempt to consult by phone with physicians with whom the SBPSO contracted.

By engaging in the above conduct, DOMINICK committed the offense of Deprivation of Civil Rights Under Color of Law, in violation of 18 U.S.C. § 242. With a bad purpose to disobey and disregard the law, DOMINICK willfully and intentionally deprived Henry of her constitutional right to be free from a correctional officer's deliberate indifference to her serious medical needs. DOMINICK, acting under color of law as an SBPP correctional officer, knew that Henry had serious medical needs and that she was at substantial risk of serious harm. However, he willfully disregarded the substantial risk of serious harm to Henry's health and safety by failing to take reasonable measures to address Henry's objectively serious medical conditions. It was foreseeable that DOMINICK's conduct would result in Henry's physical injury and death, and his conduct did in fact result in Henry's physical injury and death.

_____   1/16/2020
TRACEY N. KNIGHT                   Date
CHANDRA MENON
Assistant United States Attorneys
CHRISTINE M. SISCARETTI
Trial Attorney, Civil Rights Division

_____   1/16/2020
PAUL C. FLEMING, JR.                Date
Counsel for Defendant Andre Dominick

_____   1-16-20
ANDRE DOMINICK                    Date
Defendant